**BLANK ROME LLP**
*A Pennsylvania LLP*
STEPHEN M. ORLOFSKY
New Jersey Resident Partner
MICHAEL R. DARBEE
300 Carnegie Center, Suite 220
Princeton, NJ 08540
Telephone: (609) 750-2646
Fax: (609) 897-7286
Orlofsky@BlankRome.com
MDarbee@BlankRome.com

**BLANK ROME LLP**
Mara B. Levin (*pro hac vice*
application forthcoming)
Rachel L. Cohn (application for
plenary admission forthcoming)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 885-5000
Fax:  (212) 885-5001
mlevin@blankrome.com
rcohn@blankrome.com

*Attorneys for Defendant Westland Garden State Plaza Limited Partnership*

**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RETAILING ENTERPRISES, LLC d/b/a INVICTA,<br><br>                Plaintiff,<br><br>      v.<br><br>WESTLAND GARDEN STATE PLAZA LIMITED PARTNERSHIP,<br><br>                Defendant. | Civil Action No.: |

## NOTICE OF REMOVAL

Defendant Westland Garden State Plaza Limited Partnership ("Westland"), by and through its undersigned counsel, respectfully petitions this Court for removal of the above-captioned case from the Superior Court of New Jersey, Law Division, Bergen County, to the United States District Court for the District of New Jersey,

Newark Vicinage, pursuant to 28 U.S.C. §§ 1332(a), 1441(a), and 1446, and alleges as follows:

1.     Plaintiff Retailing Enterprises, LLC d/b/a Invicta ("Invicta") initiated this action against Westland in the Superior Court of New Jersey Law Division, Bergen County, Case No. BER-L-002668-20, by filing a complaint on March 19, 2020 (the "Complaint").  A copy of the Complaint is attached as **Exhibit A**.

2.     Westland was served with a copy of the Complaint on May 8, 2020.  A copy of the affidavit of service is attached hereto as **Exhibit B**.

3.     Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

4.     Venue lies in the United States District Court for the District of New Jersey, Newark Vicinage, pursuant to 28 U.S.C. §§ 1441(a) and 1446(a), because Invicta filed the state court action in this judicial district.  The District of New Jersey, Newark Vicinage, is the district embracing the location where the state court action is currently pending.

5.     Westland is entitled to remove the state court action to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 because it is a civil action involving

an amount in controversy exceeding $75,000.00 between parties of diverse citizenship.

6.      Plaintiff Invicta is a Florida limited liability company. *See* Ex. A at ¶ 2. Upon information and belief, the members of Invicta are citizens of Florida.

7.      Westland is a Delaware limited partnership. The partners of Westland are all citizens of Delaware.

8.      Thus, complete diversity of citizenship exists between the parties under 28 U.S.C. § 1332.

9.      Notice of removal is timely because it was filed within 30 days after receipt by Westland of a copy of the initial pleading setting forth the claim for relief upon which this action is based, which was served on Westland on May 8, 2020. 28 U.S.C. § 1446(b)(1); *see* Ex. B.

10.     Under 28 U.S.C. § 1332, which provides for diversity jurisdiction, the "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1).

11.     Invicta seeks damages from Westland for breach of a commercial lease agreement, breach of the covenant of quiet enjoyment, and constructive eviction, as well as "reasonable attorneys' fees, costs, and disbursements as provided under the

Lease and/or otherwise." *See* Ex A at "Wherefore" Clauses of Counts One through Three.

12.    When federal subject matter jurisdiction is based on diversity of citizenship, the amount in controversy must be determined from an examination of the complaint at the time it was filed. *Indep. Mach. Co. v. Int'l Tray Pads & Packaging, Inc.*, 991 F. Supp. 687, 691 (D.N.J. 1998). Whether the amount in controversy requirement has been satisfied is generally determined from the face of the plaintiff's complaint. *Angus v. Shiley*, 989 F.2d 142, 145 (3d Cir. 1993).

13.    Here, the Complaint does not specify a precise amount of damages. Instead, the Complaint seeks recovery from Westland for "damages in an amount to be determined at trial." *See* Ex. A at "Wherefore" Clauses of Counts One through Three. The Complaint does not expressly state any minimum or maximum amount of Invicta's potential damages.

14.    "If the complaint is ambiguous as to the damages asserted, the court may consider subsequent documentation." *Indep. Mach. Co.*, 991 F. Supp. at 691. The court must make an independent appraisal of the claim's value to determine whether it satisfies the amount in controversy requirement. *Angus*, 989 F.2d at 146.

15.    The amount in controversy is "not measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated." *Id.* The court must also consider attorneys' fees and punitive damages in

its calculations. *Siroy v. Jobson Healthcare Info. LLC*, No. 16-04523-CLW, 2019 WL 1598021, at *4 (D.N.J. Apr. 15, 2019).

16.     Here, Invicta alleges that it "is entitled to recover its damages from Westland, including but not limited to its lost sales and revenues and the rents paid, in an amount to be determined at trial." Ex. A at ¶ 48.

17.     Invicta alleges that "the current Minimum Annual Rent is $172,590.41, or around $14,382.53 per month." Ex. A at ¶ 8. Invicta claims that it was forced to close its store on December 5, 2019 but has "continued to pay rents to Westland as required in the Lease during the time that it has been deprived of its use and enjoyment of the Premises." Ex. A at ¶¶ 19, 36.

18.     Invicta is clearly seeking reimbursement of the rent it paid during the time it was closed, from approximately December 5, 2019 through the present. As of the date of this filing, those six months of rent alone exceed $68,000. In addition, Invicta seeks to recover an unknown amount in "lost sales and revenues," which Invicta alleges would have been "substantial" over the holiday season and thereafter. Ex. A at ¶ 19.

19.     These amounts, plus the interest, costs, attorneys' fees, and disbursements sought exceeds $75,000 and satisfies the amount in controversy requirement.

20.     Because the parties to this action are citizens of different states, and because the amount in controversy exceeds $75,000, federal diversity jurisdiction exists, and removal of this action is appropriate under 28 U.S.C. § 1332(a).

21.     Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of the Notice of Removal is being provided to Plaintiff and is being filed with the Superior Court of New Jersey Law Division, Bergen County.

22.     Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served on Defendants in this action is attached hereto as **Exhibit C**.

**WHEREFORE**, Defendant Westland respectfully requests that the above-captioned action pending against it in the Superior Court of New Jersey Law Division, Bergen County, be removed to the United States District Court for the District of New Jersey, Newark Vicinage.

Dated: June 5, 2020

*/s/ Stephen M. Orlofsky*
**BLANK ROME LLP**
*A Pennsylvania LLP*
STEPHEN M. ORLOFSKY
New Jersey Resident Partner
MICHAEL R. DARBEE
300 Carnegie Center, Suite 220
Princeton, NJ 08540
Telephone: (609) 750-2646
Fax: (609) 897-7286
Orlofsky@BlankRome.com
MDarbee@BlankRome.com

**BLANK ROME LLP**
Mara B. Levin (*pro hac vice* application forthcoming)
Rachel L. Cohn (application for plenary admission forthcoming)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 885-5000
Fax: (212) 885-5001
mlevin@blankrome.com
rcohn@blankrome.com

*Attorneys for Defendant Westland Garden State Plaza Limited Partnership*

# EXHIBIT A

**BARTON LLP**
711 Third Avenue, 14th Floor
New York, NY 10017
(212) 687-6262
rrasey@bartonesq.com
mward@bartonesq.com
*Attorneys for Plaintiff*

| | |
|---|---|
| RETAILING ENTERPRISES, LLC d/b/a INVICTA, | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: BERGEN COUNTY |
| Plaintiff, | DOCKET NO. BER-L-002668-20 |
| vs. | CIVIL ACTION |
| WESTLAND GARDEN STATE PLAZA LIMITED PARTNERSHIP, | **COMPLAINT** |
| Defendant. | |

Plaintiff Retailing Enterprises, LLC d/b/a Invicta ("Invicta" or "Tenant"), by way of complaint against defendant Westland Garden State Plaza Limited Partnership ("Westland" or "Landlord") alleges and says:

### Introduction

1.      This is a commercial landlord-tenant action brought by Invicta, as Tenant, against Westland, as Landlord, for breach of the covenant of quiet enjoyment and constructive eviction, seeking damages and termination of the parties' lease agreement.

### Parties

2.      Plaintiff Invicta is a Florida limited liability company, duly authorized by the New Jersey Secretary of State to transact business in New Jersey, and operates "Invicta" retail stores in New Jersey and at other locations throughout the United States.

3.      Defendant Westland is a Delaware limited partnership with its main offices located in California, and operates and leases commercial retail space at the Westfield Garden State Plaza

shopping mall (the "GSP mall"), a multi-level, enclosed shopping center with more than 300 retail stores located in Paramus, New Jersey.

### Facts Common to All Causes of Action

4.     On or about November 14, 2013, Invicta and Westland entered into a lease agreement of that date (the "Lease"), whereby Invicta leased from Westland certain retail store space within the GSP mall identified as Store No. 2327 (the "Premises"), for a term of around ten years, commencing on March 31, 2015 and ending on January 31, 2024.   A true copy of the Lease is annexed hereto as Exhibit A.

5.     The Premises are located on the GSP mall's second level, and are approximately 600 square feet in size.   Invicta has operated an Invicta retail store in the Premises continuously from around the beginning of the Lease term until around December 5, 2019.

### *Relevant Lease Provisions*

6.     As stated in the Lease, the intended use by Invicta of the Premises, and the sole permitted use of the Premises, was and is "[p]rimarily for the retail sale of Invicta watches and Invicta branded items. ...   The Premises shall be used solely for the use stated above and for no other use or purpose."   Lease, at § 7.01.

7.     Invicta is required under the Lease to keep its retail store in the Premises operating as such and open to the public, with a full employee staff and inventory, during the GSP mall's shopping hours. *See* Lease, at § 7.02.

8.     Under the Lease, Invicta is required to pay "Minimum Annual Rent" for the Premises, which escalates in amount during each year of the Lease term (running from April 1 to March 31 of the following year).   The current Minimum Annual Rent is $172,590.41, or around $14,382.53 per month. *See* Lease, at 1-2 and § 2.01.

2

9.     In addition to the Minimum Annual Rent, Invicta is required to pay "Percentage Rental" for the Premises, equal to seven per cent of its Gross Sales at the Premises in excess of an "Annual Breakpoint" which escalates in amount during each year of the Lease term. The current Annual Breakpoint is $2,465,577.22. *See* Lease, at 2 and § 2.02.

10.     In addition to the Minimum Annual Rent and Percentage Rent, Invicta is required to pay as "Additional Rent" prorated portions of Westland's expenses which Westland passes through to the GSP mall's retail tenants, including taxes, Common Charges, Operating Costs and Expenses, utility charges, and other various costs and fees. *See, e.g.*, Lease, at §§ 1.02, 2.04, 2.06, 8.03, 12.01.

11.     Westland, as Landlord, is required under the Lease to operate and maintain the GSP mall's Common Areas "at a level comparable to other regional shopping malls in the region in which the Development is located." Lease, at § 8.01.

12.     Westland is also required to maintain the GSP mall's physical structure, including the building's roof, walls, foundation, in good repair, except to the extent of storefronts and other elements which tenants are responsible for maintaining. *See* Lease, at § 10.01.

13.     In addition, Westland is required to obtain and maintain during the Lease term an "all risk" insurance policy insuring the GSP mall and the leaseholder improvements to the Premises, rental interruption insurance, and commercial generally liability insurance, and other types of insurance, all of which are to be included in Westland's Operating Costs and Expenses which are apportioned to and paid as Additional Rent by tenants, including Invicta. *See* Lease, at § 11.02.

14.     As provided in Section 25.01 of the Lease, Westland owes a covenant of quiet enjoyment of the Premises to Invicta, as follows:

> Upon payment by Tenant of Rental herein provided and other charges payable by Tenant under this Lease, and upon the observance and performance of all the covenants, terms and conditions on Tenant's part to be observed and performed, Tenant shall peaceably and quietly hold and

3

enjoy the Premises for the Term hereby demised without hindrance or interruption by Landlord or any other person or persons lawfully or equitably claiming by, through or under Landlord, subject nevertheless to the terms and conditions of this Lease, any mortgage and/or deed of trust to which this Lease is subordinated and any reciprocal easement agreement made between Landlord and tenants or others occupying the Department Stores.

15.     The Lease also contains a section addressing "Hazardous Materials", which term is defined to include materials subject to regulation under federal or state environmental laws, any material "which is toxic", and, in particular, formaldehyde, among other categories of and specifically named substances.  Lease, at § 7.03(a).  Under the Lease, Invicta, as Tenant, is generally prohibited from generating or using Hazardous Materials such that they might be "released, emitted, … discharged, leached, dumped, or disposed of from the Premises onto or into any other property." *Id.*, at § 7.03(b).  Upon information, these provisions regarding Hazardous Materials are standard provisions included in all of Westland's leases with retail tenants at the GSP mall.

16.     Pursuant to Section 27.22 of the Lease, in the event that either party to the Lease commences an action or proceeding against the other party relating to the Lease provisions or any default thereunder, the non-prevailing shall reimburse the prevailing party for its reasonable attorneys' fees, costs, and disbursements incurred thereby.

### Events Giving Rise to This Action

17.     In or around November or early December 2019, Invicta learned that its employees working in the retail store in the Premises were noticing strange odors and experiencing upper respiratory problems; eye, nose, and throat irritation; and itching while they were in the Premises, and that  Westland had failed to address the matter despite complaints from store employees.

18.     Upon investigation, Invicta's management determined that the air quality in the Premises was or could be posing a significant risk to the health of store employees, and to customers

4

or anyone else who might spend significant time within the Premises, and that the store had to be closed until the matter could be resolved.

19.     On or around December 5, 2019, Invicta closed its retail store in the Premises to the public, and asked the local Fire Department to inspect the Premises. Invicta has been unable to open the retail store since then, causing substantial losses of sales and revenues that Invicta would otherwise have earned during the holiday season and thereafter.

20.     In the morning of December 6, 2019 at around 8:30 a.m., members of the Fire Department came to the Premises and tested the air for carbon monoxide. They did not detect any excessive carbon monoxide levels or unusual odor, and suggested that Invicta bring in a Hazardous Materials, or "hazmat", team to inspect the Premises.

21.     In August 2018, well over a year before the air quality issue arose, Invicta had removed a bathroom in the rear of the Premises in order to create more storage space. Westland took the position that Invicta itself was responsive for the complained-of odors and health concerns by improperly removing the bathroom fixtures in a manner that supposedly allowed sewage odors to escape.

22.     On or around December 12, 2019, Westland sent Invicta a Notice of Default under the Lease, on the stated grounds that Invicta had failed to keep the store open and operating as required under the Lease and had removed the bathroom without first obtaining written approval (although in fact, Westland had been informed of the bathroom removal and did not object), and falsely accused Invicta of failing to maintain the Premises in safe and sanitary condition, concealing the presence of "Hazardous Materials" in the Premises, and compromising public health and safety.

23.     By letter dated December 23, 2019, Invicta, through counsel, strenuously denied Westland's accusations, and stated that because Westland had not taken any action to correct the

5

potentially toxic air quality in the Premises, Invicta would have to keep its store closed until the matter was remedied.

24.     As a matter of fact, the Premises were being polluted by Hazardous Materials at a level sufficient to compromise health and safety, but not because of any act or omission by Invicta; rather, it was the result of Westland's failure to maintain safe conditions for tenants, employees, and members of the public within the GSP mall.

25.     Upon information and belief, the source of the Hazardous Materials compromising air quality, health, and safety within the Premises was (and is) a restaurant which opened in the GSP mall on the level below the Premises sometime after Invicta had constructed its retail store and taken occupancy of the Premises, with the restaurant kitchen located directly beneath the Premises.

26.     Upon further information and belief, Westland, through its own acts and/or omissions, and/or the acts and omissions of the restaurant owners and/or others acting under authorization or right from Westland, failed to properly close and seal the floor between the Premises and the restaurant kitchen located directly below the Premises, and created and/or allowed substantial gaps and holes in the floor structure between the restaurant kitchen and the Premises, which have allowed fumes and particulate matter, including Hazardous Materials, to enter into the Premises.

27.     On December 19, 2019, Angstrom Testing Services ("Angstrom"), a private environmental testing company engaged by Invicta, conducted air sampling in and around the Premises, which it then analyzed for a wide range of potential airborne toxins and materials.

28.     On January 4, 2020, Angstrom issued its report based on its analysis of the air samples, and a true copy of the Angstrom report is annexed hereto as Exhibit B.  The Angstrom report notes the following findings:

a.     Elevated levels of carbon dioxide in the Premises.  While the air samples taken from the GSP mall outside the Premises showed a relatively safe level of carbon dioxide of around 410 parts per million ("ppm"), the level inside the Premises was between 770 and 890 ppm, well above the generally safe level of 700 ppm for indoor air.  Indoor combustion devices, such as restaurant stoves, tend to increase carbon dioxide levels.

b.     Elevated levels of formaldehyde in the Premises.  Angstrom found levels of formaldehyde in the Premises that were *100 to 150 times greater* than the acceptable benchmark level (0.077 ug/m$^3$) established by the New Jersey Department of Environmental Protection ("NJDEP").  Formaldehyde is an irritant of the eyes, nose, and throat, may trigger an allergic sensitization, and is classified as a Group 1 carcinogen.  Gas stoves are a source of formaldehyde.

c.     Elevated levels of ethanol in the Premises.  Angstrom also found elevated levels of ethanol in the Premises around eight times greater than the generally accepted safe level established by the Massachusetts Department of Environmental Protection.  Ethanol is used in cleaning products, and, because the Invicta store had been closed since around two weeks before air sampling, Angstrom concluded that the ethanol could be associated with cleaners and solvents used in the restaurant below the Premises.  Ethanol vapor may cause eye and upper respiratory tract irritation, fatigue, headache, and sleepiness.

29.     On or around January 10, 2020, Invicta, through its counsel, provided a copy of the Angstrom report to Westland's counsel.

7

30.     Nevertheless, on or around January 7, 2020, Westland commenced a summary eviction proceeding against Invicta, based on Westland's December 12, 2019 Notice of Default, which has been adjourned.

31.     Westland has failed to remedy the conditions that rendered the Premises unsuitable for occupancy and for the express purposes for which they were leased, and Invicta has not been able to reopen its retail store or otherwise to occupy the Premises.

## FIRST CAUSE OF ACTION
### (Breach of Covenant of Quiet Enjoyment)

32.     Plaintiff realleges the allegations contained in paragraphs 1 through 31 hereof, as if set forth fully and at length herein.

33.     As alleged in the foregoing paragraphs, defendant Westland, as Landlord, by its own acts and omissions, and by the acts and omissions of those acting under authority and/or legal right from Westland, has rendered the Premises unsuitable for occupancy and for the express purposes for which the Premises were leased by plaintiff Invicta, as Tenant, and has thereby seriously interfered with the beneficial enjoyment of the Premises by Invicta.

34.     Invicta has performed all of its material obligations under the Lease.

35.     As a result of the foregoing, Invicta was compelled to close its retail store in the Premises early in the holiday shopping season and to keep the store closed since then, causing Invicta to lose substantial sales and revenues which it otherwise would have earned and received but for Westland's improper acts and omissions.

36.     Invicta has continued to pay rents to Westland as required in the Lease during the time that it has been deprived of its use and enjoyment of the Premises.

37.     By reason of the foregoing, Westland has breached its covenant of quiet enjoyment owed to Invicta under the Lease.

8

38.     By reason of the foregoing, Invicta is entitled to recover its damages from Westland, including but not limited to its lost sales and revenues and the rents paid during the period for which Invicta has been deprived of use and enjoyment of the Premises, in an amount to be determined at trial, and to terminate the Lease.

**WHEREFORE,** plaintiff Invicta demands that judgment be entered in its favor and against defendant Westland as follows:

(a)     Judgment that defendant Westland has breached its covenant of quiet enjoyment;

(b)     Terminating the Lease;

(c)     Damages in an amount to be determined at trial;

(d)     Interest and costs of suit;

(c)     Invicta's reasonable attorneys' fees, costs, and disbursements as provided under the Lease and/or otherwise; and

(d)     Such other and further relief as the Court may deem just and proper.

**SECOND CAUSE OF ACTION**
**(Constructive Eviction)**

39.     Plaintiff realleges the allegations contained in paragraphs 1 through 38 hereof, as if set forth fully and at length herein.

40.     As alleged in the foregoing paragraphs, defendant Westland, as Landlord, breached its covenant of quite enjoyment owed to plaintiff Invicta, as Tenant, under the Lease, rendering the Premises unsuitable for occupancy and for the express purposes for which Invicta leased them.

41. Invicta has performed all of its material obligations under the Lease.

9

42.     Invicta closed its retail store in the Premises and removed its employees therefrom within a reasonable time after it learned that the Premises had been rendered unsuitable for occupancy.

43.     By reason of the foregoing, Invicta has been constructively evicted from the Premises.

44.     By reason of the foregoing, Invicta is entitled to recover its damages from Westland, including but not limited to its lost sales and revenues and the rents paid during the period for which Invicta has been constructively evicted from the Premises, in an amount to be determined at trial, and to terminate the Lease.

**WHEREFORE,** plaintiff Invicta demands that judgment be entered in its favor and against defendant Westland as follows:

(a)     Judgment that plaintiff Invicta has been constructively evicted from the Premises;

(b)     Terminating the Lease;

(c)     Damages in an amount to be determined at trial;

(d)     Interest and costs of suit;

(c)     Invicta's reasonable attorneys' fees, costs, and disbursements as provided under the Lease and/or otherwise; and

(d)     Such other and further relief as the Court may deem just and proper.

### THRID CAUSE OF ACTION
### (Breach of Lease)

45.     Plaintiff realleges the allegations contained in paragraphs 1 through 34 hereof, as if set forth fully and at length herein.

10

46.     As alleged in the foregoing paragraphs, defendant Westland, as Landlord, breached its obligations to plaintiff Invicta, as Tenant, under the Lease, by, among other things, breaching its covenant of quiet enjoyment, failing to operate and maintain the GSP mall's Common Areas and physical structure to extent and levels required under the Lease, and failing to provide Premises suitable for their intended purpose under the Lease.

47.     Invicta has performed all of its material obligations under the Lease.

48.     By reason of the foregoing, Invicta is entitled to recover its damages from Westland, including but not limited to its lost sales and revenues and the rents paid, in an amount to be determined at trial, and to terminate the Lease.

**WHEREFORE,** plaintiff Invicta demands that judgment be entered in its favor and against defendant Westland as follows:

(a)     Judgment that defendant Westland has breached the Lease;

(b)     Terminating the Lease;

(c)     Damages in an amount to be determined at trial;

(d)     Interest and costs of suit;

(c)     Invicta's reasonable attorneys' fees, costs, and disbursements as provided under the Lease and/or otherwise; and

(d)     Such other and further relief as the Court may deem just and proper.

11

Dated: March 19, 2020 in New York, New York.

**BARTON LLP**
711 Third Avenue, 14th Floor
New York, NY 10017
(212) 687-6262
rrasey@bartonesq.com
mward@bartonesq.com
*Attorneys for Plaintiff*

By:_____
      Randall L. Rasey
      Michael C. Ward

12

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, the Court is advised that Randall L. Rasey, Esq. is hereby designated as trial counsel.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues involved herein under R. 4:35-1.

## CERTIFICATION PURSUANT TO RULE 4.5-1

I, Randall L. Rasey, an attorney duly admitted to practice in the Courts of the State of New Jersey, hereby certify that the foregoing claims currently are not subject of any court proceeding or pending arbitration. However, on or about January 10, 2020, defendant Westland commenced an eviction proceeding alleging non-payment of rent in the Superior Court of New Jersey, Special Civil Part, captioned *Westland Garden State Plaza v. Retail Enterprises, LLC d/b/a Invicta*, Docket No. BER-LT-485-20. That matter currently is pending before Judge Joseph R. Rosa in landlord/tenant proceedings in the Superior Court of New Jersey for Bergen County.

No other action or arbitration proceeding is contemplated at this time.

I know of no other party who should be joined in this action.

I hereby certify that the foregoing statements are true and accurate. I am aware that if any of the foregoing statements are willfully false, I may be subject to punishment.

Randall L. Rasey

Dated: March 19, 2020
New York, New York

13

# EXHIBIT B

**SUPERIOR COURT OF NEW JERSEY**
**BERGEN COUNTY – LAW DIVISION**

RETAILING ENTERPRISES, LLC d/b/a INVICTA

DOCKET NO.: BER-L-002668-20

vs

*Plaintiff*

WESTLAND GARDEN STATE PLAZA LIMITED PARTNERSHIP

*Defendant*

## AFFIDAVIT OF SERVICE

State of New Jersey }
County of Monmouth }  ss.:

The undersigned, being duly sworn, deposes and says;

Deponent is not a party herein, is over 18 years of age and resides in the state of New Jersey,

That on **05/08/2020** at **11:30 AM** at **820 Bear Tavern Road, West Trenton, NJ 08628**

deponent served **Civil Action Summons and Complaint, Civil Case Information Statement, Track Assignment Notice, Electronic Notice**

on **Westland Garden State Plaza Limited Partnership** a limited partnership, c/o The Corporation Trust Company, Registered Agent,

by delivering thereat a true copy of each to **Breon Thompson (authorized to accept service)** personally.

<u>Description of Person Served:</u>
Gender : Male
Skin :  Black
Hair : Black
Age : 22 - 35 Yrs.
Height : 5' 9" - 6' 0"
Weight :161-200 Lbs.
Other :



Sworn to before me this
12 day of May, 2020

_____
NOTARY PUBLIC

_____
John Newman

Serving By Irving, Inc. | 233 Broadway, Suite 2201 | New York, NY 10279
New York City Dept. of Consumer Affairs License No. 0761160

# EXHIBIT C

 CT Corporation

**Service of Process Transmittal**
05/08/2020
CT Log Number 537639142

**TO:** CINDY LOPEZ
Westfield LLC
2049 CENTURY PARK E STE 4000
LOS ANGELES, CA 90067-3214

**RE:** **Process Served in New Jersey**

**FOR:** Westland Garden State Plaza Limited Partnership  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | RETAILING ENTERPRISES, LLC, etc., Pltf. vs. Westland Garden State Plaza Limited Partnership, Dft. |
| **DOCUMENT(S) SERVED:** | - |
| **COURT/AGENCY:** | None Specified<br>Case # BERL00266820 |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Trust Company, West Trenton, NJ |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 05/08/2020 at 11:42 |
| **JURISDICTION SERVED :** | New Jersey |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 05/08/2020, Expected Purge Date: 05/13/2020 |
| | Image SOP |
| | Email Notification,  Seth Davis  seth.davis@urw.com |
| | Email Notification,  LISA SHELLEY  lisa.shelley@urw.com |
| | Email Notification,  Linda Bell  lbell@westfield.com |
| | Email Notification,  HYURA CHOI  hyura.choi@urw.com |
| | Email Notification,  CINDY LOPEZ  cindy.lopez@urw.com |
| | Email Notification,  ISABELA GAIDO  isabela.gaido@urw.com |
| **SIGNED:**<br>**ADDRESS:** | The Corporation Trust Company<br>208 S La Salle St Ste 814<br>Chicago, IL 60604-1101 |
| **For Questions:** | 866-203-1500<br>DealTeam@wolterskluwer.com |

Page 1 of  1 / NS

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

## SUMMONS

Attorney(s) <u>Randall L. Rasey, Michael C. Ward</u>

Office Address <u>Barton LLP</u>

Town, State, Zip Code <u>711 Third Avenue, 14th Floor</u>

<u>New York, NY 10017</u>

Telephone Number <u>(212) 687-6262</u>

Attorney(s) for Plaintiff <u>Retailing Enterprises, LLC d/b/a Invict</u>

RETAILING ENTERPRISES, LLC

d/b/a INVICTA

      Plaintiff(s)

  vs.

WESTLAND GARDEN STATE PLAZA

LIMITED PARTNERSHIP

      Defendant(s)

# Superior Court of New Jersey

Bergen     ▼ County

LAW       Division

Docket No: <u>BER-L-002668-20</u>

# CIVIL ACTION
# SUMMONS

From The State of New Jersey To The Defendant(s) Named Above:

    The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

    If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

    If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.

                                  Michelle M. Smith

                                  Clerk of the Superior Court

DATED: <u>05/06/2020</u>

Name of Defendant to Be Served: <u>Westland Garden State Plaza Limited Partnership</u>

Address of Defendant to Be Served: _____

Revised 11/17/2014, CN 10792-English (Appendix XII-A)

**BERGEN COUNTY COURTHOUSE**
**SUPERIOR COURT LAW DIV**
**BERGEN COUNTY JUSTICE CTR RM 415**
**HACKENSACK     NJ 07601-7680**

                           **TRACK ASSIGNMENT NOTICE**

**COURT TELEPHONE NO. (201) 221-0700**
**COURT HOURS  8:30 AM - 4:30 PM**

                    **DATE:   MAY 06, 2020**
                    **RE:     RETAILING ENTERPRISE S, LLC  VS WESTLAND GARDEN S**
                    **DOCKET: BER L -002668 20**

     **THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 2.**

     **DISCOVERY IS   300 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS**
**FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.**

     **THE PRETRIAL JUDGE ASSIGNED IS:  HON RACHELLE L. HARZ**

     **IF YOU HAVE ANY QUESTIONS, CONTACT TEAM     003**
**AT:  (201) 527-2600.**

     **IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A**
 **CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.**
     **PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE**
**WITH  R.4:5A-2.**

                    **ATTENTION:**

                         **ATT: RANDALL L. RASEY**
                         **BARTON LLP**
                         **711 THIRD AVE**
                         **14TH FL**
                         **NEW YORK        NY 10017**

**ECOURTS**

# Civil Case Information Statement
## (CIS)

Use for initial Law Division
Civil Part pleadings (not motions) under *Rule* 4:5-1
**Pleading will be rejected for filing, under *Rule* 1:6-6(c),
if information above the black bar is not completed
or attorney's signature is not affixed**

| For Use by Clerk's Office Only | |
|---|---|
| Payment type: ☐ ck ☐ cg ☐ ca | |
| Chg/Ck Number: | |
| Amount: | |
| Overpayment: | |
| Batch Number: | |

| Attorney/Pro Se Name | Telephone Number | County of Venue |
|---|---|---|
| Randall L. Rasey | 212-687-6262 | Bergen |

**Firm Name (if applicable)**
Barton LLP

**Docket Number (when available)**

**Office Address**
711 Third Avenue, 14th Floor
New York, New York 10017

**Document Type**
Complaint

| Jury Demand | ■ Yes | ☐ No |
|---|---|---|

**Name of Party (e.g., John Doe, Plaintiff)**
Retailing Enterprises, LLC d/b/a Invicta,
Plaintiff

**Caption**
Retailing Enterprises, LLC d/b/a Invicta
vs.
Westland Garden State Plaza Limited Partnership

**Case Type Number**
(See reverse side for listing)
302

**Are sexual abuse claims alleged?**
☐ Yes  ■ No

**Is this a professional malpractice case?** ☐ Yes ■ No
If you have checked "Yes," see *N.J.S.A.* 2A:53A-27 and applicable case law regarding your obligation to file an affidavit of merit.

**Related Cases Pending?**
■ Yes    ☐ No

**If "Yes," list docket numbers**
BER-LT-485-20

**Do you anticipate adding any parties
(arising out of same transaction or occurrence)?**
☐ Yes       ■ No

**Name of defendant's primary insurance company (if known)**
☐ None
■ Unknown

---

### The Information Provided on This Form Cannot be Introduced into Evidence.

**Case Characteristics for Purposes of Determining If Case Is Appropriate for Mediation**

**Do parties have a current, past or recurrent relationship?**
■ Yes      ☐ No

**If "Yes," is that relationship:**
☐ Employer/Employee    ☐ Friend/Neighbor    ☐ Other (explain)
☐ Familial    ■ Business

**Does the statute governing this case provide for payment of fees by the losing party?** ■ Yes ☐ No

Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition

**Do you or your client need any disability accommodations?**
☐ Yes  ■ No

**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?**
☐ Yes  ■ No

**If yes, for what language?**

I certify that confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

**Attorney Signature:**



ie 2

# Civil Case Information Statement
## (CIS)
Use for initial pleadings (not motions) under *Rule* 4:5-1

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

### Track I - 150 days discovery

| | |
|---|---|
| 151 Name Change | 506 PIP Coverage |
| 175 Forfeiture | 510 UM or UIM Claim (coverage issues only) |
| 302 Tenancy | 511 Action on Negotiable Instrument |
| 399 Real Property (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction) | 512 Lemon Law |
| | 801 Summary Action |
| 502 Book Account (debt collection matters only) | 802 Open Public Records Act (summary action) |
| 505 Other Insurance Claim (including declaratory judgment actions) | 999 Other (briefly describe nature of action) |

### Track II - 300 days discovery

| | |
|---|---|
| 305 Construction | 603Y Auto Negligence – Personal Injury (verbal threshold) |
| 509 Employment (other than Conscientious Employees Protection Act (CEPA) or Law Against Discrimination (LAD)) | 605 Personal Injury |
| | 610 Auto Negligence – Property Damage |
| 599 Contract/Commercial Transaction | 621 UM or UIM Claim (includes bodily injury) |
| 603N Auto Negligence -- Personal Injury (non-verbal threshold) | 699 Tort – Other |

### Track III - 450 days discovery

| | |
|---|---|
| 005 Civil Rights | 608 Toxic Tort |
| 301 Condemnation | 609 Defamation |
| 602 Assault and Battery | 616 Whistleblower / Conscientious Employee Protection Act (CEPA) Cases |
| 604 Medical Malpractice | |
| 606 Product Liability | 617 Inverse Condemnation |
| 607 Professional Malpractice | 618 Law Against Discrimination (LAD) Cases |

### Track IV - Active Case Management by Individual Judge / 450 days discovery

| | |
|---|---|
| 156 Environmental/Environmental Coverage Litigation | 514 Insurance Fraud |
| 303 Mt. Laurel | 620 False Claims Act |
| 508 Complex Commercial | 701 Actions in Lieu of Prerogative Writs |
| 513 Complex Construction | |

### Multicounty Litigation (Track IV)

| | |
|---|---|
| 271 Accutane/Isotretinoin | 601 Asbestos |
| 274 Risperdal/Seroquel/Zyprexa | 623 Propecia |
| 281 Bristol-Myers Squibb Environmental | 624 Stryker LFIT CoCr V40 Femoral Heads |
| 282 Fosamax | 625 Firefighter Hearing Loss Litigation |
| 285 Stryker Trident Hip Implants | 626 Abilify |
| 286 Levaquin | 627 Physiomesh Flexible Composite Mesh |
| 289 Reglan | 628 Taxotere/Docetaxel |
| 291 Pelvic Mesh/Gynecare | 629 Zostavax |
| 292 Pelvic Mesh/Bard | 630 Proceed Mesh/Patch |
| 293 DePuy ASR Hip Implant Litigation | 631 Proton-Pump Inhibitors |
| 295 AlloDerm Regenerative Tissue Matrix | 632 HealthPlus Surgery Center |
| 296 Stryker Rejuvenate/ABG II Modular Hip Stem Components | 633 Prolene Hernia System Mesh |
| 297 Mirena Contraceptive Device | |
| 299 Olmesartan Medoxomil Medications/Benicar | |
| 300 Talc-Based Body Powders | |

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1, in the space under "Case Characteristics."

**Please check off each applicable category** ☐ **Putative Class Action**     ☐ Title 59     ☐ **Consumer Fraud**

**BARTON LLP**
711 Third Avenue, 14th Floor
New York, NY 10017
(212) 687-6262
rrasey@bartonesq.com
mward@bartonesq.com
*Attorneys for Plaintiff*

| | |
|---|---|
| RETAILING ENTERPRISES, LLC d/b/a INVICTA, | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: BERGEN COUNTY |
| Plaintiff, | DOCKET NO.  BER-L-002668-20 |
| vs. | CIVIL ACTION |
| WESTLAND GARDEN STATE PLAZA LIMITED PARTNERSHIP, | **COMPLAINT** |
| Defendant. | |

Plaintiff Retailing Enterprises, LLC d/b/a Invicta ("Invicta" or "Tenant"), by way of complaint against defendant Westland Garden State Plaza Limited Partnership ("Westland" or "Landlord") alleges and says:

### Introduction

1.       This is a commercial landlord-tenant action brought by Invicta, as Tenant, against Westland, as Landlord, for breach of the covenant of quiet enjoyment and constructive eviction, seeking damages and termination of the parties' lease agreement.

### Parties

2.       Plaintiff Invicta is a Florida limited liability company, duly authorized by the New Jersey Secretary of State to transact business in New Jersey, and operates "Invicta" retail stores in New Jersey and at other locations throughout the United States.

3.       Defendant Westland is a Delaware limited partnership with its main offices located in California, and operates and leases commercial retail space at the Westfield Garden State Plaza

shopping mall (the "GSP mall"), a multi-level, enclosed shopping center with more than 300 retail stores located in Paramus, New Jersey.

### Facts Common to All Causes of Action

4.    On or about November 14, 2013, Invicta and Westland entered into a lease agreement of that date (the "Lease"), whereby Invicta leased from Westland certain retail store space within the GSP mall identified as Store No. 2327 (the "Premises"), for a term of around ten years, commencing on March 31, 2015 and ending on January 31, 2024. A true copy of the Lease is annexed hereto as Exhibit A.

5.    The Premises are located on the GSP mall's second level, and are approximately 600 square feet in size. Invicta has operated an Invicta retail store in the Premises continuously from around the beginning of the Lease term until around December 5, 2019.

### *Relevant Lease Provisions*

6.    As stated in the Lease, the intended use by Invicta of the Premises, and the sole permitted use of the Premises, was and is "[p]rimarily for the retail sale of Invicta watches and Invicta branded items. ... The Premises shall be used solely for the use stated above and for no other use or purpose." Lease, at § 7.01.

7.    Invicta is required under the Lease to keep its retail store in the Premises operating as such and open to the public, with a full employee staff and inventory, during the GSP mall's shopping hours. *See* Lease, at § 7.02.

8.    Under the Lease, Invicta is required to pay "Minimum Annual Rent" for the Premises, which escalates in amount during each year of the Lease term (running from April 1 to March 31 of the following year). The current Minimum Annual Rent is $172,590.41, or around $14,382.53 per month. *See* Lease, at 1-2 and § 2.01.

2

9.      In addition to the Minimum Annual Rent, Invicta is required to pay "Percentage

Rental" for the Premises, equal to seven per cent of its Gross Sales at the Premises in excess of an

"Annual Breakpoint" which escalates in amount during each year of the Lease term. The current

Annual Breakpoint is \$2,465,577.22. *See* Lease, at 2 and § 2.02.

10.      In addition to the Minimum Annual Rent and Percentage Rent, Invicta is required to

pay as "Additional Rent" prorated portions of Westland's expenses which Westland passes through

to the GSP mall's retail tenants, including taxes, Common Charges, Operating Costs and Expenses,

utility charges, and other various costs and fees. *See, e.g.*, Lease, at §§ 1.02, 2.04, 2.06, 8.03, 12.01.

11.      Westland, as Landlord, is required under the Lease to operate and maintain the GSP

mall's Common Areas "at a level comparable to other regional shopping malls in the region in

which the Development is located." Lease, at § 8.01.

12.      Westland is also required to maintain the GSP mall's physical structure, including

the building's roof, walls, foundation, in good repair, except to the extent of storefronts and other

elements which tenants are responsible for maintaining. *See* Lease, at § 10.01.

13.      In addition, Westland is required to obtain and maintain during the Lease term an

"all risk" insurance policy insuring the GSP mall and the leaseholder improvements to the Premises,

rental interruption insurance, and commercial generally liability insurance, and other types of

insurance, all of which are to be included in Westland's Operating Costs and Expenses which are

apportioned to and paid as Additional Rent by tenants, including Invicta. *See* Lease, at § 11.02.

14.      As provided in Section 25.01 of the Lease, Westland owes a covenant of quiet

enjoyment of the Premises to Invicta, as follows:

> Upon payment by Tenant of Rental herein provided and other charges
> payable by Tenant under this Lease, and upon the observance and
> performance of all the covenants, terms and conditions on Tenant's part to
> be observed and performed, Tenant shall peaceably and quietly hold and

3

enjoy the Premises for the Term hereby demised without hindrance or interruption by Landlord or any other person or persons lawfully or equitably claiming by, through or under Landlord, subject nevertheless to the terms and conditions of this Lease, any mortgage and/or deed of trust to which this Lease is subordinated and any reciprocal easement agreement made between Landlord and tenants or others occupying the Department Stores.

15.     The Lease also contains a section addressing "Hazardous Materials", which term is defined to include materials subject to regulation under federal or state environmental laws, any material "which is toxic", and, in particular, formaldehyde, among other categories of and specifically named substances. Lease, at § 7.03(a). Under the Lease, Invicta, as Tenant, is generally prohibited from generating or using Hazardous Materials such that they might be "released, emitted, … discharged, leached, dumped, or disposed of from the Premises onto or into any other property." *Id.*, at § 7.03(b). Upon information, these provisions regarding Hazardous Materials are standard provisions included in all of Westland's leases with retail tenants at the GSP mall.

16.     Pursuant to Section 27.22 of the Lease, in the event that either party to the Lease commences an action or proceeding against the other party relating to the Lease provisions or any default thereunder, the non-prevailing shall reimburse the prevailing party for its reasonable attorneys' fees, costs, and disbursements incurred thereby.

### *Events Giving Rise to This Action*

17.     In or around November or early December 2019, Invicta learned that its employees working in the retail store in the Premises were noticing strange odors and experiencing upper respiratory problems; eye, nose, and throat irritation; and itching while they were in the Premises, and that Westland had failed to address the matter despite complaints from store employees.

18.     Upon investigation, Invicta's management determined that the air quality in the Premises was or could be posing a significant risk to the health of store employees, and to customers

4

or anyone else who might spend significant time within the Premises, and that the store had to be closed until the matter could be resolved.

19.     On or around December 5, 2019, Invicta closed its retail store in the Premises to the public, and asked the local Fire Department to inspect the Premises. Invicta has been unable to open the retail store since then, causing substantial losses of sales and revenues that Invicta would otherwise have earned during the holiday season and thereafter.

20.     In the morning of December 6, 2019 at around 8:30 a.m., members of the Fire Department came to the Premises and tested the air for carbon monoxide. They did not detect any excessive carbon monoxide levels or unusual odor, and suggested that Invicta bring in a Hazardous Materials, or "hazmat", team to inspect the Premises.

21.     In August 2018, well over a year before the air quality issue arose, Invicta had removed a bathroom in the rear of the Premises in order to create more storage space.  Westland took the position that Invicta itself was responsive for the complained-of odors and health concerns by improperly removing the bathroom fixtures in a manner that supposedly allowed sewage odors to escape.

22.     On or around December 12, 2019, Westland sent Invicta a Notice of Default under the Lease, on the stated grounds that Invicta had failed to keep the store open and operating as required under the Lease and had removed the bathroom without first obtaining written approval (although in fact, Westland had been informed of the bathroom removal and did not object), and falsely accused Invicta of failing to maintain the Premises in safe and sanitary condition, concealing the presence of "Hazardous Materials" in the Premises, and compromising public health and safety.

23.     By letter dated December 23, 2019, Invicta, through counsel, strenuously denied Westland's accusations, and stated that because Westland had not taken any action to correct the

potentially toxic air quality in the Premises, Invicta would have to keep its store closed until the matter was remedied.

24.     As a matter of fact, the Premises were being polluted by Hazardous Materials at a level sufficient to compromise health and safety, but not because of any act or omission by Invicta; rather, it was the result of Westland's failure to maintain safe conditions for tenants, employees, and members of the public within the GSP mall.

25.     Upon information and belief, the source of the Hazardous Materials compromising air quality, health, and safety within the Premises was (and is) a restaurant which opened in the GSP mall on the level below the Premises sometime after Invicta had constructed its retail store and taken occupancy of the Premises, with the restaurant kitchen located directly beneath the Premises.

26.     Upon further information and belief, Westland, through its own acts and/or omissions, and/or the acts and omissions of the restaurant owners and/or others acting under authorization or right from Westland, failed to properly close and seal the floor between the Premises and the restaurant kitchen located directly below the Premises, and created and/or allowed substantial gaps and holes in the floor structure between the restaurant kitchen and the Premises, which have allowed fumes and particulate matter, including Hazardous Materials, to enter into the Premises.

27.     On December 19, 2019, Angstrom Testing Services ("Angstrom"), a private environmental testing company engaged by Invicta, conducted air sampling in and around the Premises, which it then analyzed for a wide range of potential airborne toxins and materials.

6

28.    On January 4, 2020, Angstrom issued its report based on its analysis of the air samples, and a true copy of the Angstrom report is annexed hereto as Exhibit B.  The Angstrom report notes the following findings:

a.    Elevated levels of carbon dioxide in the Premises.  While the air samples taken from the GSP mall outside the Premises showed a relatively safe level of carbon dioxide of around 410 parts per million ("ppm"), the level inside the Premises was between 770 and 890 ppm, well above the generally safe level of 700 ppm for indoor air.  Indoor combustion devices, such as restaurant stoves, tend to increase carbon dioxide levels.

b.    Elevated levels of formaldehyde in the Premises.  Angstrom found levels of formaldehyde in the Premises that were *100 to 150 times greater* than the acceptable benchmark level (0.077 ug/m$^3$) established by the New Jersey Department of Environmental Protection ("NJDEP").  Formaldehyde is an irritant of the eyes, nose, and throat, may trigger an allergic sensitization, and is classified as a Group 1 carcinogen.  Gas stoves are a source of formaldehyde.

c.    Elevated levels of ethanol in the Premises.  Angstrom also found elevated levels of ethanol in the Premises around eight times greater than the generally accepted safe level established by the Massachusetts Department of Environmental Protection.  Ethanol is used in cleaning products, and, because the Invicta store had been closed since around two weeks before air sampling, Angstrom concluded that the ethanol could be associated with cleaners and solvents used in the restaurant below the Premises.  Ethanol vapor may cause eye and upper respiratory tract irritation, fatigue, headache, and sleepiness.

29.    On or around January 10, 2020, Invicta, through its counsel, provided a copy of the Angstrom report to Westland's counsel.

7

30.     Nevertheless, on or around January 7, 2020, Westland commenced a summary eviction proceeding against Invicta, based on Westland's December 12, 2019 Notice of Default, which has been adjourned.

31.     Westland has failed to remedy the conditions that rendered the Premises unsuitable for occupancy and for the express purposes for which they were leased, and Invicta has not been able to reopen its retail store or otherwise to occupy the Premises.

### FIRST CAUSE OF ACTION
**(Breach of Covenant of Quiet Enjoyment)**

32.     Plaintiff realleges the allegations contained in paragraphs 1 through 31 hereof, as if set forth fully and at length herein.

33.     As alleged in the foregoing paragraphs, defendant Westland, as Landlord, by its own acts and omissions, and by the acts and omissions of those acting under authority and/or legal right from Westland, has rendered the Premises unsuitable for occupancy and for the express purposes for which the Premises were leased by plaintiff Invicta, as Tenant, and has thereby seriously interfered with the beneficial enjoyment of the Premises by Invicta.

34.     Invicta has performed all of its material obligations under the Lease.

35.     As a result of the foregoing, Invicta was compelled to close its retail store in the Premises early in the holiday shopping season and to keep the store closed since then, causing Invicta to lose substantial sales and revenues which it otherwise would have earned and received but for Westland's improper acts and omissions.

36.     Invicta has continued to pay rents to Westland as required in the Lease during the time that it has been deprived of its use and enjoyment of the Premises.

37.     By reason of the foregoing, Westland has breached its covenant of quiet enjoyment owed to Invicta under the Lease.

8

38.     By reason of the foregoing, Invicta is entitled to recover its damages from Westland, including but not limited to its lost sales and revenues and the rents paid during the period for which Invicta has been deprived of use and enjoyment of the Premises, in an amount to be determined at trial, and to terminate the Lease.

**WHEREFORE,** plaintiff Invicta demands that judgment be entered in its favor and against defendant Westland as follows:

    (a)    Judgment that defendant Westland has breached its covenant of quiet enjoyment;

    (b)    Terminating the Lease;

    (c)    Damages in an amount to be determined at trial;

    (d)    Interest and costs of suit;

    (c)    Invicta's reasonable attorneys' fees, costs, and disbursements as provided under the Lease and/or otherwise; and

    (d)    Such other and further relief as the Court may deem just and proper.

### SECOND CAUSE OF ACTION
**(Constructive Eviction)**

39.     Plaintiff realleges the allegations contained in paragraphs 1 through 38 hereof, as if set forth fully and at length herein.

40.     As alleged in the foregoing paragraphs, defendant Westland, as Landlord, breached its covenant of quite enjoyment owed to plaintiff Invicta, as Tenant, under the Lease, rendering the Premises unsuitable for occupancy and for the express purposes for which Invicta leased them.

41. Invicta has performed all of its material obligations under the Lease.

9

42.     Invicta closed its retail store in the Premises and removed its employees therefrom within a reasonable time after it learned that the Premises had been rendered unsuitable for occupancy.

43.     By reason of the foregoing, Invicta has been constructively evicted from the Premises.

44.     By reason of the foregoing, Invicta is entitled to recover its damages from Westland, including but not limited to its lost sales and revenues and the rents paid during the period for which Invicta has been constructively evicted from the Premises, in an amount to be determined at trial, and to terminate the Lease.

   **WHEREFORE,** plaintiff Invicta demands that judgment be entered in its favor and against defendant Westland as follows:

   (a)     Judgment that plaintiff Invicta has been constructively evicted from the Premises;

   (b)     Terminating the Lease;

   (c)     Damages in an amount to be determined at trial;

   (d)     Interest and costs of suit;

   (c)     Invicta's reasonable attorneys' fees, costs, and disbursements as provided under the Lease and/or otherwise; and

   (d)     Such other and further relief as the Court may deem just and proper.

### THRID  CAUSE OF ACTION
### (Breach of Lease)

45.     Plaintiff realleges the allegations contained in paragraphs 1 through 34 hereof, as if set forth fully and at length herein.

10

46.     As alleged in the foregoing paragraphs, defendant Westland, as Landlord, breached its obligations to plaintiff Invicta, as Tenant, under the Lease, by, among other things, breaching its covenant of quiet enjoyment, failing to operate and maintain the GSP mall's Common Areas and physical structure to extent and levels required under the Lease, and failing to provide Premises suitable for their intended purpose under the Lease.

47.     Invicta has performed all of its material obligations under the Lease.

48.     By reason of the foregoing, Invicta is entitled to recover its damages from Westland, including but not limited to its lost sales and revenues and the rents paid, in an amount to be determined at trial, and to terminate the Lease.

**WHEREFORE,** plaintiff Invicta demands that judgment be entered in its favor and against defendant Westland as follows:

(a)     Judgment that defendant Westland has breached the Lease;

(b)     Terminating the Lease;

(c)     Damages in an amount to be determined at trial;

(d)     Interest and costs of suit;

(c)     Invicta's reasonable attorneys' fees, costs, and disbursements as provided under the Lease and/or otherwise; and

(d)     Such other and further relief as the Court may deem just and proper.

11

Dated: March 19, 2020 in New York, New York.

**BARTON LLP**
711 Third Avenue, 14th Floor
New York, NY 10017
(212) 687-6262
rrasey@bartonesq.com
mward@bartonesq.com
*Attorneys for Plaintiff*

By: _____
    Randall L. Rasey
    Michael C. Ward

12

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, the Court is advised that Randall L. Rasey, Esq. is hereby designated as trial counsel.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues involved herein under R. 4:35-1.

## CERTIFICATION PURSUANT TO RULE 4.5-1

I, Randall L. Rasey, an attorney duly admitted to practice in the Courts of the State of New Jersey, hereby certify that the foregoing claims currently are not subject of any court proceeding or pending arbitration. However, on or about January 10, 2020, defendant Westland commenced an eviction proceeding alleging non-payment of rent in the Superior Court of New Jersey, Special Civil Part, captioned *Westland Garden State Plaza v. Retail Enterprises, LLC d/b/a Invicta*, Docket No. BER-LT-485-20. That matter currently is pending before Judge Joseph R. Rosa in landlord/tenant proceedings in the Superior Court of New Jersey for Bergen County.

No other action or arbitration proceeding is contemplated at this time.

I know of no other party who should be joined in this action.

I hereby certify that the foregoing statements are true and accurate. I am aware that if any of the foregoing statements are willfully false, I may be subject to punishment.

Randall L. Rasey

Dated: March 19, 2020
New York, New York

13